USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 15, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
:
LEIGH SHAFIR, on behalf of herself and all : 
others similarly situated, :
:
                 Plaintiff, :
: 12-cv-5794 (KBF)
        -v- :
: OPINION & ORDER
CONTINUUM HEALTH CARE PARTNERS, INC. :
and ST. LUKE'S-ROOSEVELT HOSPITAL :
CENTER, :
:
                 Defendants. :
:
------------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

       In July 2012, plaintiff Leigh Shafir ("Shafir") brought this action alleging claims for violation of the overtime pay requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against her former employers, defendants Continuum Health Partners, Inc. ("Continuum") and St. Luke's-Roosevelt Hospital Center ("SLR"). Plaintiff asserts that defendants had a written policy—a policy that plaintiff alleges defendants enforced—of docking pay for partial day absences, in violation of the Secretary's regulations for exempt employees. According to plaintiff, the existence and enforcement of this policy altered the terms of compensation to require payment on an hourly, not salaried basis.

Now pending before the Court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is GRANTED and this action is DISMISSED.

I.  PROCEDURAL HISTORY

On July 27, 2012, plaintiff commenced this action, on behalf of herself and all others similarly situated, alleging one claim for violation of the overtime wage provisions of the FLSA, 29 U.S.C. §§ 201 et seq., and one claim under NYLL Article 19 §§ 650 et seq., and its supporting regulations, against defendants.  (Compl., ECF No. 1.)  Plaintiff filed an amended complaint on January 25, 2013, in which she alleged that she had been "paid entirely on an hourly basis, with her ultimate compensation determined by the number of hours she worked in any given pay period."  (Am. Compl. ¶ 55, ECF No. 13.)  After Judge Miriam Goldman Cedarbaum—who at the time presided over this action—granted plaintiff another opportunity to amend, on August 20, 2013, plaintiff filed the operative Third Amended Class Action Complaint ("Third Amended Complaint").  (Third Am. Compl. ("TAC"), ECF No. 20.)  The Third Amended Complaint asserted a new theory of liability, which was that the salary basis test was not met because defendants had communicated a "clear and particularized policy to [the PAs] that partial day absences will result in a dock in pay."  (TAC ¶¶ 34, 43.)

Defendants moved to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) on September 27, 2013.  (ECF No. 21.)  That motion became fully briefed on October 25, 2013.  (ECF No. 27.)  On October 21, 2014, Judge Cedarbaum issued a decision converting defendants' motion to one for summary judgment under

Rule 56 in light of the parties' reliance on matters outside the pleadings. (ECF No. 31.) As a result of the conversion of the motion, the parties were given the opportunity to take additional discovery and submit any supplemental material to the Court. In September 2015, the parties' filed supplemental briefing and evidentiary material in relation to defendants' now-motion for summary judgment. (See ECF Nos. 46-49, 52-53.) This action was subsequently transferred to the undersigned on November 13, 2015. On December 10, 2015 and December 15, 2015, respectively, plaintiff and defendants submitted additional briefing on a limited issue relating to plaintiff's NYLL claim. (ECF Nos. 54-55.) Defendants now argue that they are entitled to judgment as a matter of law because plaintiff has failed to raise a genuine issue of fact as to whether the salary basis test has been satisfied.

II.   FACTUAL BACKGROUND

The core allegations of plaintiff's claims are as follows. Plaintiff was employed as a PA at SLR from August 2008 through February 2010. (TAC ¶ 6.)[1] In her Third Amended Complaint, plaintiff alleges that she and other similarly situated PAs were required to and did work in excess of 40 hours per week on numerous occasions for which they were not given time-and-a-half pay, and were also required to and did make up any partial day absences in order to not have their pay docked. (TAC ¶¶ 6, 44.) Plaintiff alleges that she did not receive more than $6,000 worth of overtime pay over the duration of her employment. (TAC ¶ 52.) Plaintiff alleges that although she and other similarly situated PAs were deemed to

---

[1] Continuum is a partnership network formed by SLR and other facilities. (TAC ¶¶ 10, 19.)

be exempted salaried employees, defendants misclassified the PAs because they do not satisfy the salary basis test. (TAC ¶¶ 31, 46.) Plaintiff alleges that the salary basis test was not met because defendants communicated a "clear and particularized policy . . . that partial day absences will result in a dock in pay." (TAC ¶ 34.) At her deposition, plaintiff conceded that she is not challenging her job duties as they relate to being an exempt employee and instead limits her claim solely to the salary basis test. (Decl. of Edward Cerasia II, Ex. A ("Pl.'s Dep. Tr.") at 4, ECF No. 23.)

According to plaintiff, she understood that she would be paid bi-weekly at the rate of $3,115.39 for 80 hours of work, resulting in an annualized pay rate of $81,000. (Pl.'s Dep. Tr. at 21.)[2] Plaintiff testified that for every hour or increment of an hour that she worked beyond 40 hours in a one-week period or 80 hours in a two-week period, she understood that she would be paid at an hourly rate of $38.94. (Pl.'s Dep. Tr. at 24.) She received at least $3,115.39 per two-week pay period during the period of her employment, except for one pay period when she was paid less because she took off one full day of personal time for Yom Kippur. (Pl.'s Dep. Tr. at 18-43, 51-52.)

As stated above, plaintiff alleges that defendants communicated a "clear and particularized policy . . . that partial day absences will result in a dock in pay." (TAC ¶ 34.) Plaintiff points to a policy entitled "Attendance Responsibility" from

---

[2] The parties have not filed statements of undisputed material facts as required under Local Rule 56.1. See Local Rule 56.1. On this motion for summary judgment, the Court construes the evidence in the light most favorable to plaintiff; to the extent that certain facts are ultimately unfavorable to plaintiff with respect to the Court's resolution of the pending motion, the Court relies only on those facts for which there is no conflicting admissible evidence in the record.

4

SLR's "Human Resources Policy and Procedure Manual" to support that allegation. The policy, which by its terms applies to all SLR employees, states, in relevant part, that "[p]ay may be docked for lateness." (TAC, Ex. 1.) Plaintiff offers no evidence to indicate that she ever read this attendance policy, but testified at her deposition that her understanding was that she would not be paid for time missed if she had to take a partial day absence and didn't have accrued sick or other leave time. (Pl.'s Dep. Tr. at 50-51.)

During discovery, plaintiff deposed Ken Barritt, SLR's corporate vice president for financial operations, and Nicole Hargraves, the Administrator of SLR's Neurology, Rehabilitation, and Speech and Hearing Departments, at which plaintiff was employed. The Court recounts the pertinent testimony from those depositions below.

At his deposition, Barritt was asked whether exempt employees (including PAs) could have their pay docked for being late. He answered:

> Generally, it's not. It's in the policy, but the policy is policy, and then there's practice. So, for instance, if an employee shows up late, it can be an hour late, two hours late, shows up, they generally would not be docked that first instance. However, if it's habitual, they'd be counseled and then it could, in fact, result, at some point, in being docked for pay.

(TAC, Ex. 2 ("Barritt Dep. Tr.") at 30.) Barritt later added, "It's a policy that could be enforced" and stated that "[i]t could be applied to all employees." (Barritt Dep. Tr. at 31-32.) Barritt also explained, however, that defendants "run training classes for our timekeepers, in which we explain to them that exempt employees, if they show up to work, they get paid for the day." (Barritt Dep. Tr. at 23.)

5

At her deposition, Hargraves testified that although she had the authority to dock pay for tardiness, she had <u>never</u> done so.  (TAC, Ex. 3 ("Hargraves Dep. Tr.") at 28-29.)  When asked why she had never docked an employee's pay for tardiness, Hargraves testified that employees understand that they need to make up that time by not taking lunch or staying later for work.  (Hargraves Dep. Tr. at 29; <u>see also</u> Hargraves Dep. Tr. at 31-32.)  Hargraves testified that she had, in contrast, docked employees' pay because of excessive absences in situations where the employees had used up paid time off.  (Hargraves Dep. Tr. at 28.)  Hargraves also testified that she is not a "stickler" for docking pay for employees who have to leave early due to sickness but who have no accrued sick time.  (Hargraves Dep. Tr. at 20.)

Plaintiff also obtained a declaration from Charles Keenan, Jr., who stated that he was employed at SLR from approximately January 2010 until July 2011, and that his responsibilities included keeping track of time for "salaried" employees such as PAs.  (TAC, Ex. 4 ("Keenan Decl.") ¶¶ 2-3.)  Keenan testified that he was fully aware of SLR's policy to dock "salaried" employees' pay for partial day absences and that pursuant to that same policy "salaried" employees did in fact have their pay docked for partial day absences.  (Keenan Decl. ¶¶ 5-6.)  Keenan did not, however, testify that there was a practice of docking PAs' salaries specifically.  Barritt testified in a declaration that Keenan only kept track of time for employees who were non-exempt and that Keenan did not report or keep track of time for any PAs.  (Decl. of Ken Barritt ¶ 3, ECF No. 23.)

6

During discovery, defendants produced bi-weekly payroll records for 56 PAs covering the duration of plaintiff's employment. (Supp. Decl. of Edward Cerasia II ("Supp. Cerasia Decl.") ¶ 2, ECF No. 47.) Upon the request of plaintiff's counsel, defendants also produced time records for 21 of the 56 PAs. (Supp. Cerasia Decl. ¶ 3.) Plaintiff's counsel subsequently identified only one PA (identified in the parties' papers as "M.K.") who experienced inadvertent deductions to her salary; those deductions occurred during three pay periods in the fall of 2008, which totaled $378.59. (Supp. Cerasia Decl. ¶ 4; see also Decl. of Lucelenia Andujar ¶ 6, ECF No. 48.) After reviewing payroll documents in connection with this lawsuit, on August 13, 2015, SLR reimbursed M.K. in the amount of $378.59. (Supp. Cerasia Decl. ¶ 5; Decl. of Irina Markel ¶¶ 2-4, ECF No. 49.)

III.   LEGAL STANDARDS

   A.   Summary Judgment

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts

7

showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

   B.   Fair Labor Standards Act – Salary Basis Test

The FLSA entitles employees to time-and-a-half overtime pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Employees

employed in a "bona fide executive, administrative, or professional capacity" are exempt from that provision. 29 U.S.C. § 213(a)(1). "Under regulations promulgated by the Secretary [of Labor], one requirement for exempt status under § 213(a)(1) is that the employee earn a specified minimum amount on a 'salary basis.'" Auer v. Robbins, 519 U.S. 452, 455 (1997) (quoting 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e)).

Pursuant to the Secretary's regulations, compensation is earned on a salary basis "if the employee regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602; see Ahern v. Cnty. of Nassau, 118 F.3d 118, 119 (2d Cir. 1997). The regulations do, however, permit deductions from an exempt employee's pay when the employee "is absent from work for one or more full days for personal reasons, other than sickness or disability," 29 C.F.R. § 541.602(b)(1), and "for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules . . . pursuant to a written policy applicable to all employees," 29 C.F.R. § 541.602(b)(5). The regulations also permit an employer to provide additional compensation without violating the salary basis requirement if the employment arrangement includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. 29 C.F.R. § 541.604(a). The regulations also explicitly provide that they "shall not be construed in an unduly technical manner so as to defeat the exemption." 29 C.F.R. § 541.603(e).

An employer generally will not satisfy the salary basis requirement if it "maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work." Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (alterations omitted).  Exempt status will, however, only be denied if there is an "actual practice of making . . . deductions," or a "clear and particularized policy—one which effectively communicates that deductions will be made in specified circumstances."  Id.; see Auer, 519 U.S. at 461 (Exempt status will be denied "if there is either an actual practice of making [improper] deductions or an employment policy that creates a 'significant likelihood' of such deductions."); Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 521 (S.D.N.Y. 2013).  The object of the inquiry is to determine "whether the employer's practices reflect an objective intention to pay its employees on a salaried basis." Yourman v. Giuliani, 229 F.3d 124, 130 (2d Cir. 2000) (quotation marks omitted).

The regulations provide a number of factors to consider when determining whether an employer has an actual practice of making improper deductions, including: "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper

10

deductions." 29 C.F.R. § 541.603(a). The regulations also provide that "[t]he best evidence of a clearly communicated policy is a written policy that was distributed to employees prior to the improper pay deductions by, for example, providing a copy of the policy to employees at the time of hire, publishing the policy in an employee handbook or publishing the policy on the employer's Intranet." 29 C.F.R. § 541.603(d).

The regulations allow for a "window of correction, so that when a deduction not permitted by the regulation is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." Yourman, 229 F.3d at 128 (quotation marks, citation and alterations omitted). The window of correction is not available to an employer who "engages in a practice of making impermissible deductions in its employees' pay, or has a policy that effectively communicates to its employees that such deductions will be made." Id.

    C.    <u>New York Labor Law</u>

Like the FLSA, the NYLL mandates that employers pay time-and-a-half for work done in excess of forty hours per week. 12 N.Y.C.R.R. § 142-2.2. The NYLL also similarly contains an exemption for employees who work in, <u>inter alia</u>, a bona fide professional capacity. 12 N.Y.C.R.R. § 142-2.16(c). While many provisions of the FLSA and NYLL are nearly identical, the NYLL, unlike the FLSA, imposes no salary basis requirement for application of its professional exemption for overtime pay; an employer claiming a professional exemption need only satisfy a duties test. 12 N.Y.C.R.R. § 142.-2.14(c)(4)(iii); <u>Zubair v. EnTech Eng'g P.C.</u>, 808 F. Supp. 2d

592, 600 (S.D.N.Y. 2011); <u>Davis v. Lenox Hill Hosp.</u>, No. 03 CIV.3746 DLC, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004).

IV.  DISCUSSION

Defendants argue that plaintiff has failed to raise a genuine issue of material fact as to whether SLR paid plaintiff and other similarly situated PAs on a "salary basis" in accordance with the Secretary's regulations.  Plaintiff counters that the record shows that SLR has "a written policy to deduct pay from alleged exempt salaried employees for partial day absences, intends to and does enforce such policy, and affirmatively attempts to conceal the practical effect of such policy by demanding that any such employees make up any partial day absences off the time clock."  (Pl.'s Response to Defs.' Supp. Mem. of Law at 4, ECF No. 52.)  The Court agrees that plaintiff has failed to raise a genuine issue of fact.  As explained below, plaintiff has presented insufficient evidence to support an inference that defendants had an actual practice of deducting pay for partial day absences or that the cited policy created a significant likelihood of improper deductions.  See <u>Auer</u>, 519 U.S. at 461.

First, plaintiff has failed to present evidence showing that defendants had an actual practice of making improper deductions.  Plaintiff has not identified a single instance in which she received less than her full bi-weekly salary; plaintiff received at least $3,115.39 per two-week pay period for the full duration of her employment, except for one pay period when she took a full day off without having any accrued personal time.  (Pl.'s Dep. Tr. at 18-43, 51-52.)  The regulations permit such a deduction for a full day absence.  29 C.F.R. § 541.602(b)(1).  The only evidence

supporting the existence of an actual practice of improper deductions is the three instances in which <u>one</u> PA's pay was deducted in the fall of 2008 for a total of $378.59 (Supp. Cerasia Decl. ¶ 4), and Keenan's affidavit testimony that "'salaried' employees did in fact have their pay docked for partial day absences" (Keenan Decl. ¶ 6).

 Although the Second Circuit has cautioned that there is no bright-line test for determining whether an employer has an actual practice of making improper deductions, <u>Yourman</u>, 229 F.3d at 130, three apparently inadvertent deductions as to a single employee out of 56 similarly situated employees—whom defendants reimbursed when they became aware of the deductions—does not support an actual practice of improperly docking salaried employees' pay, <u>see</u> <u>Quinones v. PRC Mgmt. Co. LLC</u>, No. 14-CV-9064 VEC, 2015 WL 4095263, at *4 (S.D.N.Y. July 7, 2015); <u>Stein v. Guardsmark, LLC</u>, No. 12 CIV. 4739 JPO, 2013 WL 3809463, at *6 (S.D.N.Y. July 23, 2013); <u>Kelly v. City of New York</u>, No. 91CIV.2567(JFK), 2000 WL 1154062, at *10 (S.D.N.Y. Aug. 15, 2000).  Keenan's generalized testimony is similarly inadequate support a finding of an actual practice to make improper deductions to PAs' pay.  Keenan did not state that defendants docked the pay of PAs, and the undisputed evidence shows that he did not keep time for any PAs (or any other exempt employees) and therefore could not and would not have been responsible for docking such pay himself.  (Decl. of Ken Barritt ¶ 3.)

 Although plaintiff has identified a written attendance policy stating that "[p]ay may be docked for lateness" (TAC, Ex. 1), she has failed to create a genuine

issue of fact as to whether that policy created a significant likelihood of improper deductions as required by the Secretary's regulations and governing precedent. Where, as here, a plaintiff identifies a policy applicable to both salaried and non-salaried employees, the employer's mere reservation of the right to deduct from an exempt employee's pay does not convert that person into a non-exempt employee. See Auer, 519 U.S. at 461 (stating that clear and particularized policy requirement is intended to "avoid[ ] the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees" (citation omitted)). Plaintiff must, furthermore, show not only that deductions as to salaried employees were permitted, but also that such deductions were in fact made in specified circumstances. Yourman, 229 F.3d at 129.

      Plaintiff's evidence showing that defendants made three inadvertent deductions to the pay of a single employee, and that there was a written policy that by its terms was merely permissive and applicable to all salaried and non-salaried employees, does not create a significant likelihood of improper deductions as to plaintiff and similarly situated PAs. See Coleman-Edwards v. Simpson, 330 F. App'x 218, 220 (2d Cir. 2009) (finding no clear policy where plaintiff had presented evidence of a single deduction and two written memoranda threatening to dock pay based on uniform infractions) (summary order). Nor does plaintiff's assertion that she understood that her pay could be docked for partial day absences by itself

14

establish a significant likelihood that improper deductions would be made. See Anani v. CVS RX Servs., Inc., 788 F. Supp. 2d 55, 65 (E.D.N.Y. 2011) ("An independent belief that improper deductions would be made falls well short of establishing a clear and particularized policy."). As to the deposition testimony of Barritt and Hargraves (which plaintiff cites for support and mischaracterizes in the Third Amended Complaint and in her briefing), Barritt stated only that the attendance policy "could be enforced" and Hargraves merely explained that employees understood that they should make up missed time by skipping lunch or staying later at work. (Barritt Dep. Tr. at 31-32; Hargraves Dep. Tr. at 29, 31-32.) At best, plaintiff has shown nothing more than the possibility that defendants could deduct pay for partial day absences. Where there has been evidence of (effectively) only one example of an actual deduction being applied to an individual within the class, the existence of a policy that makes deductions permissive does not deprive the employer of the exempt status. Yourman, 229 F.3d at 129; Ahern, 118 F.3d at 121-22.

Plaintiff claims that she has at least raised a genuine issue of material fact based on Hargraves's testimony that employees voluntarily make up for missed time, arguing that it shows that the class members have been policing themselves, allowing defendants to conceal their enforcement of the attendance policy. (Pl.'s Response to Defs.' Supp. Mem. of Law at 6-7; see Hargraves Dep. Tr. at 30.) Given that there is no evidence that defendants have actually reduced an employee's salary based on the policy, Hargraves's general statement that employees may

15

make up lost time does not create a genuine issue of fact as to whether there was a significant likelihood that the policy subjected plaintiff and others similarly situated to a reduction in salary.  See Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 371 (7th Cir. 2005) ("Being given the choice to make up the time lost is not the same as having a policy that imposes deductions for failing to show up."); Morales v. Zondo, Inc., No. 00 CIV. 3494 AGS, 2001 WL 64745, at *4 (S.D.N.Y. Jan. 25, 2001) ("[T]he mere fact that an employee is salaried does not mean that an employer may not expect the employee to work at least 40 hours per week.").

      Plaintiff primarily cites Scholtisek v. Eldre Corp., 697 F. Supp. 2d 445 (W.D.N.Y. 2010), to support her argument that she has presented sufficient evidence of a written policy and actual evidence of deductions to survive summary judgment.  Scholtisek is, however, distinguishable.  In Scholtisek, the court granted plaintiffs' motion for summary judgment as to the existence of an actual practice of deductions based on evidence of "infrequent"—but not inadvertent—pay deductions and the evidence showed that the deductions were "called for under well known, if unwritten, company policy."  Id. at 451-54.  Here, in contrast, plaintiff has presented no evidence of an actual practice or any specific instances of deductions that were anything but inadvertent.  The court in Scholtisek went on to deny the parties' cross-motions for summary judgment on the issue of whether there was a significant likelihood of deductions in specified circumstances where there was evidence of a written policy stating that if an exempt employee was absent for more than three hours on any given day, the employee would not be permitted to come to

16

work and would not be paid for the entire day.  Id. at 458-59.  The court found significant that the policy was written in mandatory (i.e. not permissive) terms, although the court acknowledged that there was evidence that the policy was in fact routinely ignored.  See id. at 459-61.  Here, in contrast, the attendance policy is expressed only in permissive terms (it uses the word "may") and plaintiff has presented no evidence that application of the policy ever resulted in a pay deduction for plaintiff or any other similarly situated PAs.

Because plaintiff has failed to create a genuine issue of fact as to whether she or other similarly situated PAs fail the salary basis test, defendants are entitled to judgment as a matter of law.

Defendants are also independently entitled to judgment as a matter of law with respect to plaintiff's NYLL claim on an additional basis.  Because the NYLL's professional exemption does not impose a salary basis requirement, 12 N.Y.C.R.R. § 142.-2.14(c)(4)(iii); Zubair, 808 F. Supp. 2d at 600, and plaintiff has not asserted that she fails the NYLL's duties test, plaintiff's NYLL claim is independently subject to dismissal.  In the face of the clear language of the regulation and contrary interpretation in this District, the Court is not persuaded by plaintiff's arguments to the contrary based on opinion letters of the New York State Department of Labor that were prepared in relation to other cases.  (See Pl.s' Limited Response to Defs.' Reply Mem. of Law, Exs. A, B, ECF No. 54.)  Even if the salary basis test does apply to plaintiff's NYLL claim, defendants would in any event be entitled to judgment as a matter of law for the reasons previously stated.

V.      CONCLUSION[3]

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate this action.

SO ORDERED.

Dated:      New York, New York
            January 15, 2016

                                    _____
                                         KATHERINE B. FORREST
                                         United States District Judge

---

[3] The Court has considered plaintiff's other arguments, and concludes that they are without merit.